IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

L.G. BROWN, as parent and next )
friend of her minor children, )
J.L. Brown and B.K. Brown, II, )
                                )
    Plaintiff,                   )
                                )
v.                              )   Case No. 1:05-CV-01742-RMC
                                )   Judge Rosemary M. Collyer
DUPONT PARK SEVENTH DAY         )
ADVENTIST SCHOOL,               )
                                )
    Defendant.                   )

**DEFENDANT DUPONT PARK SEVENTH DAY ADVENTIST SCHOOL'S
MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO REINSTATE**

Defendant Dupont Park Seventh Day Adventist School, by undersigned counsel, hereby files its Memorandum in Opposition to Plaintiff's Motion to Reinstate Revised Complaint, and in support hereof, states as follows:

## I.   FACTS

Plaintiff L.G. Brown ("Ms. Brown") originally filed this case on August 31, 2005, and defendant responded with a Motion to Dismiss. Ms. Brown failed to respond to the Motion to Dismiss, and this Court issued an Order requiring Ms. Brown to respond to the Motion by a date certain. Ms. Brown still failed to respond to the Motion to Dismiss. Consequently, on February 2, 2006, approximately a year and a half ago, this Court entered an Order dismissing the case. Ms. Brown did not appeal the Court's Order of dismissal.

Ms. Brown has now filed a Motion attempting to obtain relief from the prior Order of this Court, stating that "several circumstances have changed" with her family

since the initial filing of her Complaint, in that she now has another daughter, her son had been hospitalized for one week, and her son made the honor roll without special education classes at his current school.

In her previously-filed Complaint, Ms. Brown was attempting to state a claim under the Americans with Disabilities Act ("ADA"). Ms. Brown applied for admission for her son and daughter to Dupont Park Seventh Day Adventist School for the 2004 school year. As evident from the pleadings, Dupont Park Seventh Day Adventist School (the "School") was a private parochial school. The School was controlled and operated by the Dupont Park Seventh Day Adventist Church.[1] Ms. Brown's children apparently qualified for the D.C. Opportunity Scholarship program and chose to apply to the School. The School denied admission to Ms. Brown's children.[2]

Plaintiff alleged that her son B.K. Brown, II ("B.K. Brown") had some type of learning disability. She did not state what disability he had. Plaintiff's daughter, J.L. Brown ("J.L. Brown"), was not alleged to have any disability.

Plaintiff Ms. Brown only sought monetary damages, and she requested a jury trial in the Complaint.

## II.    ARGUMENT

Ms. Brown fails to meet the requirements under Rule 60(b)(1) and (2) for relief from a judgment or order based upon "excusable neglect" or "newly discovered evidence". Plaintiff's Motion under Rule 60(b) is untimely, as it has not been made

---

[1] The School is accredited by the North American Division of the General Conference of Seventh Day Adventist.
[2] Although plaintiff claims the children were denied admission due to B.K.Brown's alleged disability, plaintiff also expressed concern to the School about the School's curriculum and policies which include Bible study as well as a vegetarian diet.

within one year of the Order from which relief is requested. Ms. Brown has also not stated any new evidence or facts which would show excusable neglect.

In considering a motion under Rule 60(b)(1) and (2), the Rule specifically states that such a motion must be made within a reasonable time, but "for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." It has been nearly a year and a half since the Order dismissing this case was entered.

Moreover, as the docket reflects, Ms. Brown did not appeal this Court's February 2, 2006 Order, even though the Order specifically stated that it was a final appealable Order. Ms. Brown may not use Rule 60(b) as a way around her failure to file any timely appeal. Consequently, Ms. Brown's Motion for relief is untimely and must be denied.

Furthermore, even if Ms. Brown's Complaint were reinstated, it should be dismissed with prejudice pursuant to Rule 12(b)(6). See Norman v. United States, 467 F.3d 773, 775 (D.C. 2006) (stating that "[t]o obtain Rule 60(b) relief, the movant must give the district court 'reason to believe that vacating the judgment will not be an empty exercise or a futile gesture.'" (citation omitted)). Ms. Brown's Complaint failed to state a claim for the reasons discussed in defendant's previously-filed Motion to Dismiss,[3] and it also fails for the additional reasons that it is now definitely clear that Ms. Brown's claims are time-barred by the statute of limitations and Ms. Brown failed to timely file any administrative complaint and exhaust those remedies.

---

[3] The School's original Motion to Dismiss is incorporated by reference herein. The Motion to Dismiss was based, *inter alia*, upon arguments that plaintiff failed to state a claim under Title II of the ADA since the School was not a public entity; failed to state a claim under Title III of the ADA since the School was exempt from the ADA as it was a religious entity and was operated by a religious entity; and failed to state a claim under the ADA since neither minor child was alleged to have any covered disability.

3

Ms. Brown had notice of her claim for some period of time prior to filing her original suit.[4] Ms. Brown has now definitely had notice of her claim for over a year and a half, the time since the original suit was dismissed. An ADA claim must be filed within 300 days at the latest. See 42 U.S.C. § 12117(a); Lorance v. AT&T Tech., 490 U.S. 900 (1989); Conner v. Reckitt & Coleman, Inc., 84 F.3d 1100, 1102 (8th Cir. 1996); Stewart v. District of Columbia, 2006 WL 626921 (D.D.C. 2006) (not reported) (attached hereto). To the School's knowledge, plaintiff Ms. Brown has not filed an administrative complaint since the original case was dismissed on February 2, 2006. Now, more than 300 days after dismissal of her original Complaint, Ms. Brown seeks reinstatement of the Complaint herein. Ms. Brown's case is barred by limitations, and by failure to timely file any administrative complaint and exhaust such remedies.

### III.   CONCLUSION

WHEREFORE, for the foregoing reasons, plaintiff Ms. Brown's Motion to Reinstate her Complaint should be denied.

                                                   DUPONT PARK SEVENTH DAY
                                                   ADVENTIST SCHOOL


                                        By:    /s/ David D. Hudgins
                                                 Counsel

David D. Hudgins
D.C. Bar No. 362451
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314
703.739.3300
703.739.3700 (fax)

---

[4] In her original Complaint, plaintiff specifically alleged that she was not notified that her children were denied admission to the school.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July 2007, I sent a true and accurate copy of Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Reinstate and proposed Order via first class mail, postage pre-paid to:

L.G. Brown
4241 Fort Dupont Terrace, SE
Washington, DC  20020

                                                    /s/ David D. Hudgins
                                                    Counsel

Westlaw

Not Reported in F.Supp.2d                                                                                                    Page 1

Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Stewart v. District of Columbia
D.D.C.,2006.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Trina STEWART, Plaintiff,
v.
DISTRICT OF COLUMBIA, Defendant.
**No. Civ.A. 04-1444 CKK.**

March 12, 2006.

Lisa Alexis Jones, Lisa Alexis Jones, PLLC, Washington, DC, for Plaintiff.

### MEMORANDUM OPINION
KOLLAR-KOTELLY, J.
*1 Plaintiff Trina Stewart brings this action against Defendant the District of Columbia alleging that her employer, St. Elizabeth's Hospital, which is an in-patient health care facility for individuals with acute, long-term mental health needs located in and operated by the District of Columbia, discriminated against her on the basis of her disabilities by failing to accede to her requests for a "reasonable accommodation" pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C.Code § 1-2501 *et seq.* Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff's Opposition, and Defendant's Reply. Upon a searching examination of these filings, Plaintiff's Amended Complaint, and the relevant case law, the Court shall grant-in-part and deny-in-part Defendant's Motion to Dismiss.

### I: BACKGROUND

Plaintiff's First Amended Complaint alleges that Plaintiff became employed as a housekeeper/office aide with St. Elizabeth's Hospital in December 1984. *See* First Am. Compl. ¶ 6. Prior to her hiring, "[b]eginning in her teenage years through adulthood, Stewart suffered and had been diagnosed with a serious mental and psychological impairment that substantially limited her major functions." *Id.* ¶ 7. Specifically, Plaintiff's impairment "included a chronic, episodic psychotic condition." *Id.* However, this disability, which was "well-known to her employer's at St. Elizabeth's," "was largely controlled" between 1984 and January 2002 so that Plaintiff could perform the duties of her employment. *Id.*

In January 2002, Plaintiff was transferred to work at the John Howard Pavilion ("John Howard"), a maximum-security facility within the larger St. Elizabeth's Hospital complex that "houses mentally impaired criminal defendants, many of whom are incarcerated for violent felonies." *Id.* ¶ 8. According to Plaintiff, as soon as she learned of this planned transfer, she grew concerned that the transfer would aggravate her existing medical condition. *Id.* Plaintiff complained about the transfer to her supervisor "because of her long-term chronic disability." *Id.* However, Plaintiff's supervisor "refused to consider an alternate assignment and told Stewart she would be fired should she refuse the assignment ." *Id.*

Unfortunately, "[b]ecause of the stressful environment from working at John Howard, Stewart's psychological health began to deteriorate." *Id.* ¶ 9. In early October 2002, Plaintiff conferred with the head hospital administrator "and again request a transfer out of John Howard, citing her emotional disability and the recurrence of symptomatic schizophrenia." *Id.* However, " Defendant made no effort to effect a transfer of Stewart." *Id.* Plaintiff alleges that this conduct "was done with malice and with conscious disregard for her federally protected rights." *Id.* ¶¶ 17, 22. " Soon after, about October 13, 2002, Stewart

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2 of 9

Case 1:05-cv-01742-RMC    Document 8    Filed 07/16/2007    Page 7 of 15

Not Reported in F.Supp.2d                                        Page 2
Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

attempted suicide and was hospitalized." *Id.* ¶ 9. Following Plaintiff's suicide attempt, she " immediately went out on leave and on November 21, 2002, provided documentation from her physician, placing her on disability due to work induced stress." *Id.* ¶ 9.

*2 According to Plaintiff, "[a]s a direct and proximate result of her assignment to John Howard, and defendant[']s failure to reasonably accommodate her chronic disability, Stewart has now suffered a relapse of active severe psychotic symptoms." *Id.* ¶ 11. In addition to being "placed by her physician on disability leave for emotional and physical stress related to and caused by the events that [are] the subject of this litigation," Plaintiff "has had her already slight income cease." *Id.* "To this day, defendant[ ] ha[s] refused to provide a reasonable accommodation for Stewart's disability, and Stewart remains under the care of her physicians." *Id.*

On or about June 17, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission charging Defendant with unlawful violation of her rights under the Americans with Disabilities Act, "citing violation of her rights on or about October 1, 2002." *Id.* ¶ 12. On May 24, 2004, the EEOC mailed Plaintiff a Notice of Her Right to Sue in this matter. *Id.* ¶ 13. After exhausting the EEO process, Plaintiff filed this lawsuit on August 25, 2004 alleging that Defendant violated her rights by refusing to accommodate her disability. *See* Compl. at 1. On February 4, 2005, Plaintiff-exercising her rights pursuant to Federal Rule of Civil Procedure 15(a)-requested that the Court grant her leave to file an Amended Complaint in this action. *See* Pl.'s Mot. to Amend at 1-2. On February 8, 2005, this Court granted Plaintiff's request, and formally entered Plaintiff's First Amended Complaint for Discrimination as the controlling document in this case. *See Stewart v. Dist. of Columbia,* Civ. No. 04-1444 (D.D.C. Feb. 8, 2005) (Minute Order granting Plaintiff's Motion for Leave to Amend). Plaintiff's First Amended Complaint contains two counts. Count I alleges that Defendant's failure to accommodate her disability violated the strictures of Title I of the ADA, *see* First Am. Com pl. ¶¶ 14-18 (Count I-ADA), while Count II alleges that Defendant's conduct contravened Section 504 of the Rehabilitation Act, *id.* ¶¶ 19-22 (Count II-Rehabilitation Act).

On March 2, 2005, Defendant filed a Motion to Dismiss both counts of Plaintiff's First Amended Complaint. *See* Def.'s Mot. to Dismiss. Specifically, Defendant contends that (1) "[t]he Plaintiff's claim brought under the Americans with Disabilities Act is barred by the 300-day statute of limitations," *id.* at 3; and (2) "[t]he Plaintiff's claim under the Rehabilitation Act also is barred by the 300-day statute of limitations," *id.* at 9. Following several extensions, Plaintiff filed an Opposition to Defendant's Motion to Dismiss on April 8, 2005. *See* Pl.'s Opp'n. Finally, following further extensions, Defendant filed a Reply to Plaintiff's Opposition on May 13, 2005, completing the relevant briefing in this case.

II: LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F.Supp. 914, 915 (D.D.C.1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (" The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged ."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[ ] if such inferences are not supported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Moreover, the court is not bound to accept the legal conclusions of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 3 of 9
Case 1:05-cv-01742-RMC    Document 8    Filed 07/16/2007    Page 8 of 15

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

the non-moving party. *See Taylor v. FDIC,* 132 F.3d 753, 762 (D.C.Cir.1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.,* 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C.Cir.1994); *cf. Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

III: DISCUSSION

*3 The Court shall begin its examination of Defendant's Motion to Dismiss by first analyzing Defendant's statute of limitations argument with respect to Count I of Plaintiff's First Amended Complaint (Plaintiff's ADA claim), and then shall turn its scrutiny to Defendant's limitations argument with respect to Count II of Plaintiff's First Amended Complaint (Plaintiff's Rehabilitation Act claim).

*A. Count I-Plaintiff's Claim Under Title I of the ADA*

1. *Plaintiff's EEOC Charge Was Untimely*

While the ADA does not explicitly contain its own statute of limitations, it is well-settled that the procedures of Title VII of the 1964 Civil Rights Act ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*-specifically, the limitations period set forth in 42 U.S.C. § 2000e-5-are applicable to actions brought under the ADA. *See* 42 U.S.C. § 12117(a) ( "The powers, remedies, and *procedures* set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and *procedures* this subchapter provides ... to any person alleging discrimination on the basis of disability in violation of any provision of this chapter ...."); *see also Conner v. Reckitt & Coleman, Inc.,* 84 F.3d 1100, 1102 (8th Cir.1996) (noting that the ADA incorporates the statute of limitations set out in Title VII claims); *Rodriquez v. Salinas City Sch. Dist.,* Civ. No. 98-17027, 2000 U.S.App. LEXIS 5900, at *2 (9th Cir. Feb. 10, 2000) (same). Pursuant to the procedures set forth in 42 U.S.C. § 2000e-5(e), an administrative complaint, or "charge," must be filed with the EEOC within 180 days of the alleged unfair employment practice, unless the complainant has first instituted proceedings with a state or local agency, in which case the limitations period is extended to a maximum of 300 days. *See Lorance v. AT & T Tech.,* 490 U.S. 900, 904 n. 2, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Conner,* 84 F.3d at 1102 ("The statute of limitations for a disability discrimination claim under the ADA ... is 300 days" ).

According to Plaintiff's First Amended Complaint, " [o]n or about June 17, 2003, Stewart filed a complaint with the Equal Employment Opportunity Commission charging defendants with unlawful violation of her rights under the Americans with Disabilities Act, citing violation of her rights on or about October 1, 2002." First Am. Compl. ¶ 12. The identified date of October 1, 2002 is 257 days prior to the date Plaintiff filed a complaint with the EEOC-apparently well within the more liberal 300-day statute of limitations. *See* Pl.'s Opp'n at 4; Def.'s Mot. to Dismiss at 4 (noting that 300 days prior to June 17, 2003, the date of Plaintiff's EEOC filing, is August 21, 2002).

However, it is well-settled that "[t]he statute of limitations for ADA claims accrues at the time when the plaintiff 'knew or had reason to know of the injury serving as the basis for his claim.' " *Bendik v. Credit Suisse First Boston (USA), Inc.,* Civ. No. 02-9554, 2004 WL 736852, at *5 (S.D.N.Y. Apr.5, 2004) (quoting *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999) (addressing the question when plaintiff knew or should have known that he had been passed over for promotion to sergeant)). As the District of Columbia Court of Appeals has noted,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*4** Under this rule, the plaintiff does not have " *carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm." *Hendel v. World Plan Executive Council,* 705 A.2d 656, 661 (D.C.1997). Nor need all damages be sustained, or even identified, for the cause of action to accrue; "[a]ny 'appreciable and actual harm flowing from the [defendant's] conduct' is sufficient." *Id.* (quoting *Knight v. Furlow,* 553 A.2d 1232, 1235 (D.C.1989)).

*Beard v. Edmondson & Gallagher,* 790 A.2d 541, 546 (D.C.2002). The Supreme Court has bolstered this principle by stressing that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 112-13, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)); *see also Davidson v. Indiana-American Water Works,* 953 F.2d 1058, 1059 (7th Cir.1992) ("In general, the 'limitations period begins to run on the date that the defendant took some adverse personnel action against the plaintiff, not when the full consequences of the action are felt.' ") (quoting *Ricks,* 449 U.S. at 258, 101 S.Ct. 498, 66 L.Ed.2d 431); *cf.* Pl.' s Opp'n at 4 (admitting that "[o]f course, once a victim's federally protected rights are triggered a claimant may not rely on the doctrine of continuing violation to prolong the life of her claim").

Here, Plaintiff's First Amended Complaint alleges that she requested accommodation, in the form of reassignment from John Howard, on *two* separate occasions. Her first request occurred in January 2002, and was unequivocally denied. *See* First Am. Compl. ¶ 8. In fact, Plaintiff alleges that she was told that if she refused to accept the January 2002 John Howard assignment, her employment with St. Elizabeth's Hospital would be terminated. *Id.* Ten months later, in early October 2002, Plaintiff again requested accommodation via a reassignment from John Howard-a request that was denied once again. *Id.* ¶ 9. Notably, when Plaintiff filed her charge with the EEOC on June 17, 2003, the EEOC Charge apparently made no mention of the first denial of accommodation, but instead based its claim on the October 2002 denial of accommodation. *Id.* ¶ 12.

Importantly, based on Plaintiff's own allegations, Plaintiff suffered from the same disability in January 2002 as the disability she suffered from in October 2002. According to Plaintiff, she suffered from "a serious mental and psychological impairment that substantially limited her major life functions" that included "a chronic, episodic condition." First Am. Compl. ¶ 7. According to Plaintiff, her condition rendered her sufficiently disabled to trigger the protections of the ADA. *Id.* ¶¶ 14-18 (Count I-ADA). While the severity of Plaintiff's disability might have changed, the nature of her alleged disability remained the same. Indeed, Plaintiff's First Amended Complaint stresses that her *same* disability was exacerbated by Defendant's failure to grant her original request for accommodation, an exacerbation that she expected upon first hearing the news of her transfer to John Howard in January 2002. *Id.* ¶¶ 8-9. Moreover, according to Plaintiff's allegations, at the time of Plaintiff's January 2002 request for reassignment, Plaintiff's asserted disability "was well-known to her employers at St. Elizabeth's," *id.* ¶ 7, and Plaintiff stressed that she was seeking a transfer " because of a long-term chronic disability," *id.*

**\*5** Making all reasonable inferences in favor of Plaintiff, it is clear that her ADA claim based on Defendant's refusal to transfer her from John Howard accrued when the Defendant first denied her request for that accommodation and threatened termination-i.e., January 2002. Plaintiff seeks to escape this conclusion by claiming that her " October request for an accommodation was a discrete event based on sufficiently changed circumstances in her disability." Pl.'s Opp'n at 4. Plaintiff points out that in January 2002, she was " not experiencing overtly disabling symptoms, nor did she so allege. Instead, Ms. Stewart requested an accommodation based on her chronic episodic condition." *Id.* at 4-5. In contrast, Plaintiff contends, by October her "disability had substantially changed as a result of her exposure to the prison environment" such that her emotional troubles were no longer in remission, but instead " reared their head into a full-blown symptomatic

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5 of 9
Case 1:05-cv-01742-RMC    Document 8    Filed 07/16/2007    Page 10 of 15

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

psychosis that rendered her suicidal." *Id.* at 5. Plaintiff argues that "[t]he change of circumstance of Ms. Stewart's disability and her subsequent request for an accommodation was a discrete event requiring a wholly different level of scrutiny and interactive engagement by defendant. The accommodation appropriate in October would have been qualitatively different from an accommodation ten months earlier." *Id.*

While Plaintiff does not make clear how the presumptive accommodation-i.e., reassignment from John Howard-would have been any different in October 2002 than it was in January 2002, *see* First Am. Compl. ¶ 8 (Plaintiff requested alternate assignment away from John Howard); *id.* ¶ 9 (Plaintiff "again requested a transfer out of John Howard"), it is clear that Plaintiff's argument cannot be sustained under the law. Importantly, "[o]nce aware of its responsibility to provide a reasonable accommodation, 'the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." ' *Pantazes v. Jackson*, 366 F.Supp.2d 57, 70 (D.D.C.2005) (quoting 29 C.F.R. § 1630.2(o)(3)). As Judge Ellen Segal Huvelle noted in *Pantazes,*
The interactive process begins when an employee requests an accommodation. Once this process has begun, both the employer and the employee have a duty to act in good faith, *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 333 (3d Cir.2002), and the absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation.

*Id.* (citing *Picinich v. United Parcel Serv.*, 321 F.Supp.2d 485, 514 (N.D.N.Y.2004)). As such, once an employee is sufficiently disabled to trigger ADA protections, and the employer is notified of that disability, the ADA requires the employer to engage in an interactive process with the disabled employee. Here, because-as Plaintiff has alleged-Defendant was aware of her condition and Plaintiff requested an accommodation through a reassignment in January 2002, which was denied, Plaintiff's ADA claim accrued in January 2002. Plaintiff's novel argument that her aggravated disability "require[d] a wholly different level of scrutiny and interactive engagement"-i.e., a different interactive process-is unsupported by ADA case law.

*6 Rather, while Plaintiff's alleged increase in psychotic symptoms in October 2002, where her latent problems "reared their head," Pl .'s Opp'n at 5, might be relevant to her claim for damages, the increase in symptoms in October 2002 does not alter the accrual date of her claim. Indeed, if Plaintiff's logic were followed, any employee whose disability was exacerbated due to an employer's failure to accommodate under the ADA could simply re-start the statute of limitations by re-requesting the denied accommodation. Numerous courts have clearly stated that such a result cannot be tolerated. *See Kennedy v. Chem. Waste Mgmt.*, 79 F.3d 49, 50-51 (7th Cir.1996) ("The practical objection to this argument is that if accepted it would as a practical matter eliminate the statute of limitations in ADA cases."); *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 310 (4th Cir.1998) (holding that the plaintiff's ADA claim was barred by the statute of limitations because "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination"); *Conner*, 84 F.3d at 1102 (holding that the plaintiff's ADA claim was barred by the statute of limitations because "allowing [plaintiff] to restart the statute of limitations by sending a letter requesting reasonable accommodations after she had been unequivocally fired would destroy the statute of limitations"). In this case, Plaintiff's failure to accommodate claim accrued as soon as her first request was denied in January 2002, and the statute of limitations for any claim based on such a denial begins to run from that date. Plaintiff's claim that Defendant refused to accommodate her disability resulted in increased symptoms simply cannot restart the statute of limitations. Accordingly, Plaintiff's June 17, 2003 EEOC Charge is outside of the 300-day statute of limitations applicable to Plaintiff's ADA claim, and Plaintiff's claim is untimely. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

*2. Plaintiff's ADA Claim Should Not Be Saved Through Equitable Tolling*

Perhaps realizing the futility of her argument, Plaintiff attempts to escape the statute of limitations by claiming that her claim should be subject to equitable tolling and estoppel, given that "Ms. Stewart was hospitalized and suicidal in October 2002," "[s]he had been placed on full disability by her psychiatrist until the filing of civil complaint," " and had been too sick to even go to work since October 2002, much less navigate the labyrinth[ine] requirements of EEOC exhaustion." Pl.'s Opp'n at 5-6. According to Plaintiff, "[w]here, as here, there is evidence that Ms. Stewart's disability was of such a nature as to tend to show that she was unable to manage her affairs or comprehend her legal rights, the requirement that she file suit based on her January accommodations as opposed to her October claim must be tolled." *Id.* at 5 (citing *McCracken v. Walls-Kaufman,* 717 A.2d 346 (1998)).

*7 It is well-settled that "[t]he requirement of filing a timely administrative complaint is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.' " *Sanders v. Veneman,* 131 F.Supp.2d 225, 230 (D.D.C.2001) (quoting *Ziper v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). However, the court's power to toll the statute of limitations "will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988). A plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

However, the doctrine of estoppel cannot be applied to Plaintiff's claim. Pursuant to the very statute upon which Plaintiff implicitly relies to justify her tolling argument, in order to satisfy the standard for equitable tolling based on a "disability," the disability must exist at the time the cause of action accrues. Pursuant to D.C.Code § 12-302, equitable tolling for a *non compos mentis* disability occurs only "when a person entitled to maintain an action is, *at the time the right of actions accrues,"* under the disability. *Id.* (emphasis added); *see also McCracken,* 717 A.2d at 354 ("Under District of Columbia law, such disability must exist 'at the time the right of action accrues.' ") (quoting D.C.Code § 12-302 (1995)). Importantly, " *impaired judgment alone* is not enough to toll the statute of limitations." *Speiser v. United States Dep't of Health & Human Servs.,* 670 F.Supp. 380, 384 (D.D.C.1986) (citation omitted, emphasis in original), *aff'd,* 818 F.2d 95 (D.C.Cir.1987). Instead, the disability must be "of such a nature as to show [plaintiff] is unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities." *Id.* (citation omitted); *see also McCracken,* 717 A.2d at 354; *Hendel,* 705 A.2d at 665.

Pursuant to these standards, Plaintiff's claim for equitable tolling is clearly inappropriate. According to Plaintiff's Opposition and her Complaint, Plaintiff was fully functional in January 2002, when her claim accrued. *See* Pl.'s Opp'n at 4-5; First Am. Compl. ¶ 7 ("Plaintiff's disability was largely controlled so that she could perform the duties of her employment."). While she had a latent condition that occasionally caused her problems, Plaintiff could not be considered *non compos mentis* at this time. In fact, according to Plaintiff's First Amended Complaint, it was not until October 13, 2002 that Plaintiff's incapacity became so severe that she was hospitalized. *Id.* ¶ 9. Because Plaintiff was not " disabled" within the meaning of D.C.Code § 12-302 on the date her claim accrued, then-by its plain language-she falls outside of the tolling protections of the statute. Moreover, Plaintiff's alleged mental incapacity did not occur until October 2002, approximately nine (9) months after her claim accrued. The D.C. Circuit has specifically rejected tolling in the case of such a lapse. *See Taylor v. Houston,* 211 F.2d 427 (D.C.Cir.1954). In *Taylor,* the D.C. Circuit held that:

*8 Interpreting the complaint to allege the disability was caused by the assault does not help the appellant. A few cases have held that the limitation period will not run where insanity is caused by an injury and occurs simultaneously with the injury.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7 of 9

Case 1:05-cv-01742-RMC    Document 8    Filed 07/16/2007    Page 12 of 15

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

But appellant makes no such claim. He alleges only that his disability arose twelve days after the injury. This will not suffice. Where there is a lapse of time between the injury and the insanity, the statute will have started running and will not be stopped. Of course, where the disability arises a very short time after the injury and persists throughout the entire limitation period, strong equitable considerations might militate against application of this rule. But such is not the case here.

*Id.* at 428. As such, through *Taylor,* the D.C. Circuit (1) established a general rule that a lapse of time between the injury and insanity will ensure that the statute of limitations will not be stopped, and (2) specifically rejected equitable tolling in a case where only twelve (12) days existed between alleged injury and a *non compos mentis* disability. In this case, Plaintiff was not disabled within the meaning of D.C.Code § 12-302 at the time her injury accrued, and would not face an alleged *non compos mentis* condition for another nine (9) months, which gave her approximately 270 days to bring an EEOC Charge-an action that Plaintiff failed to take. Accordingly, Plaintiff cannot take advantage of equitable tolling. Given that her ADA claim accrued over 300 days before Plaintiff brought an EEOC Charge, Plaintiff's ADA claim is barred under the statute of limitations. As such, Defendant's Motion to Dismiss must be granted with respect to Count I of Plaintiff's First Amended Complaint, and Plaintiff's ADA claim must be dismissed with prejudice.

*B. Count II-Plaintiff's Claim Under Section 504 of the Rehabilitation Act*

In contrast to Section 501, which applies to claims brought by federal employees, *see Taylor v. Small,* 350 F.3d 1286, 1291 (D.C.Cir.2003) (holding that Section 501 provides the exclusive route for federal employees to seek relief under the Rehabilitation Act), Section 504 of the Rehabilitation Act provides that: "No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. 794(a). Pursuant to Section 794(b)(1), Plaintiff's employer-St. Elizabeth's Hospital-is subject to the strictures of Section 504 of the Rehabilitation Act. In its Motion to Dismiss, Defendant contends that the procedural requirements for an employment-related Rehabilitation Act claim mirror that of an employment-related ADA claim; accordingly, because Plaintiff's claim was untimely under the 300-day limitation period provided by the ADA, Plaintiff's Section 504 Rehabilitation Act claim is likewise barred. *See* Def.'s Mot. to Dismiss at 9-10. In contrast, Plaintiff asserts that the residual three (3) year statute of limitations for filing a personal injury in the District of Columbia applies to her Rehabilitation Act claim; because Plaintiff filed her claim within this period, she contends that dismissal is inappropriate. *See* Pl.'s Opp'n at 7-8.

\*9 The Rehabilitation Act, like the ADA, does not contain its own explicit statute of limitations. Perhaps due to this infirmity, courts within this jurisdiction have split over what limitations period to apply to Rehabilitation Act claims. In *Davis v. Dist. of Columbia,* Civ. No. 02-2260 (D.D.C. Aug. 7, 2003), Judge Royce C. Lamberth reasoned that:
The Rehabilitation Act was amended in 1992 to state, "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination shall be the standards applied under Title I of the Americans with Disabilities Act." 29 U.S.C. § 794(d). Therefore, an employment discrimination claim under section 504 of the RA also requires an aggrieved party to exhaust administrative remedies prior to filing in federal court. *See* 42 U.S.C. §§ 12117(a). As stated above, Davis has not filed a charge of discrimination with the EEOC or the OHR prior to bringing his claim before this Court. As such, the Court must grant defendant's motion for summary judgment.

*Id.* at 12; *see also Turner v. Dist. of Columbia,* 383 F.Supp.2d 157, 176 (D.D.C.2005) (Urbina, J.) (assuming that because the Rehabilitation Act incorporates the ADA's "standards," and because

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 8 of 9

Case 1:05-cv-01742-RMC    Document 8    Filed 07/16/2007    Page 13 of 15

Not Reported in F.Supp.2d                                              Page 8
Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

the ADA incorporates Title VII's statute of limitations, then the Rehabilitation Act also incorporates Title VII's limitations period). The D.C. Circuit itself seemed to implicitly approve of similar reasoning in its brief opinion in *Koch v. Donaldson,* wherein it succinctly noted that "the district court properly dismissed appellant's complaint for failure to exhaust administrative remedies with respect to his Title VII, Rehabilitation Act, and ADEA claims." *Koch v. Donaldson,* Civ. No. 03-5202, 2004 WL 758957, at *1 (D.C.Cir. Apr.7, 2004) (per curiam). However, less recent decisions in this court have held that the District of Columbia's three-year personal injury statute of limitations applies, holding that because the Rehabilitation Act does not contain its own statute of limitations, the period to be applied must be drawn from the appropriate state statute. *See Doe v. Southeastern Univ.,* 732 F.Supp. 7, 9 (D.D.C.1990) (Harris, J.); *Gallion v. D.C. Dep't of Human Servs.,* Civ. No. 91-2587, 1992 WL 44360, at *1 (D.D.C.1992) (Harris, J.). These earlier decisions, which examined the issue in greater depth than the *Davis* and *Turner* decisions, stressed that pursuant to Section 794(a)(2): "The remedies, *procedures,* and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794(a)(2). Because Title VI, like Section 504, does not contain a specific statute of limitations, courts have looked to the statute of limitations used in Section 1983 and Section 1981 actions. *Doe,* 732 F.Supp. at 9. These courts have reasoned that because the Supreme Court held in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that state statute of limitations for personal injury actions apply to Section 1983 and Section 1981 actions, then the personal injury limitations period also applies to Rehabilitation Act claims. *See Doe,* 732 F.Supp. at 9.

*10 Essentially, the issue comes down to the interpretation of the 1992 amendment incorporating Section 794(d) to Section 504 of the Rehabilitation Act. Read different ways, the provision suggests different results on the statute of limitations issue.

For instance, consider this reading of the statute:
The *standards* used to determine whether this section has been *violated* in a complaint alleging employment discrimination under this section shall be the *standards* applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794a(d) (emphasis added). This reading suggests that Section 794(a) did nothing more than incorporate the ADA's standards of *liability;* by incorporating the "standards" of Title I into Section 504, Congress was simply ensuring that all employees governed by federal disability anti-discrimination law were subjected to the same liability requirements. The argument follows that because the statute did not use the "[t]he powers, remedies, and *procedures"* language used by the ADA to incorporate Title VII's limitations periods, *see* 42 U.S.C. § 12117(a), and instead only used "standards," then Congress intended to circumscribe the incorporation of the ADA-drawing the line at the limitations period. However, following the more broad reading of Section 794(a) evoked by the *Davis* and *Turner* courts, "standards applied under title I of the Americans with Disabilities Act" logically includes "powers, remedies, and procedures," and therefore incorporates the ADA's statute of limitations. The counter-argument to this broad reading is that Section 794(a), in its reference to individual sections within the ADA, does not identify Section 12117(a)-the provision of the ADA incorporating Title VII's restrictions-and instead only identifies Sections 12201-12204 and 12210. *See* 29 U.S.C. § 794(a)(d).

Turning to a review of Circuits outside of the District of Columbia, it appears that other jurisdictions are virtually unanimous in support of Plaintiff's position. For instance, the Second Circuit has repeatedly held that the statute of limitations for Rehabilitation Act claims is equivalent to Section 1983 claims (3 years) and the state statute of limitations applicable to personal injury actions (3 years). *See Harris,* 186 F.3d at 248 (noting that the stature of limitations for Rehabilitation Act claims

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

is the same as for Section 1983 claims, which in New York is three years); *Morse v. Univ. of Vermont,* 973 F.2d 122, 127 (2d Cir.1992) ("[W]e now hold that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions."). Likewise, the Fourth Circuit in a recent decision reaffirmed that the one-year limitations period proscribed by the Virginia Rights of Persons with Disabilities Act, which was modeled after the Rehabilitation Act, provided the relevant limitations period for a litigant's federal Rehabilitation Act claims. *See Duck v. Isle of Wight County Sch. Bd.,* 402 F.2d 468, 474-75 (4th Cir.2005). The Sixth Circuit, First Circuit, Third Circuit, and Ninth Circuits have followed suit. *See James v. Upper Arlington City Sch. Dist.,* 228 F.3d 764, 769 (6th Cir.2000) (citing *Southerland v. Hardaway Mgmt. Inc.,* 41 F.3d 250, 254 (6th Cir.1994) (like Section 1983, a state's personal injury statute of limitations applies to Rehabilitation Act claims)); *Brennan v. King,* 139 F.3d 258, 269 (1st Cir.1998) (plaintiff not required to exhaust Rehabilitation Act claims); *Freed v. Consol. R.R. Corp.,* 201 F.3d 188, 197 (3d Cir.2000) (finding that nothing within the language or legislative history of Section 504 or Title VI requires exhaustion; "the fact a plaintiff has the option of doing so gives plaintiffs the ability to circumvent the ADA exhaustion process by limiting their claim to one under section 504"); *Key v. Oakland Hous. Auth.,* 89 F.3d 845 (9th Cir.1996) (holding that California's one-year personal injury statute of limitations applies to Section 504 claims).

*11 Given the persuasive weight of these other jurisdictions and the soundness of the *Doe v. Southeastern University* court's reasoning, the Court concludes that the District of Columbia's three (3) year personal injury statute of limitations applies to claims brought pursuant to Section 504 of the Rehabilitation Act. Because Plaintiff's claim was brought within this period, Plaintiff's Rehabilitation Act claim is timely and Defendant's Motion to Dismiss with respect to Count II of Plaintiff's First Amended Complaint must be denied.

IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Motion to Dismiss with respect to Count I of Plaintiff's First Amended Complaint (the ADA claim), but the Court shall deny Defendant's Motion to Dismiss with respect to Count II of Plaintiff's First Amended Complaint (the Rehabilitation Act claim). An Order accompanies this Memorandum Opinion.

D.D.C.,2006.
Stewart v. District of Columbia
Not Reported in F.Supp.2d, 2006 WL 626921 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| L.G. BROWN, as parent and next friend of her minor children, J.L. Brown and B.K. Brown, II, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:05-CV-01742-RMC Judge Rosemary M. Collyer |
| DUPONT PARK SEVENTH DAY ADVENTIST SCHOOL, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

The Motion to Reinstate the Complaint of plaintiff L.G. Brown having come on, and having been considered, along with defendant Dupont Park Seventh Day Adventist School's Opposition to the Motion, and any reply thereto, it is

ORDERED that the plaintiff's Motion be, and it hereby is, DENIED.

                                                  Rosemary M. Collyer
                                                  Judge, United States District Court

cc:

David D. Hudgins, Bar No. 362451
Hudgins Law Firm, P.C.
515 King Street, Suite 400
Alexandria, VA  22314

L.G. Brown
4241 Fort Dupont Terrace, SE
Washington, DC  20020